**SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,**

v.

**GOLCONDA MINING COMPANY and
Harry F. Magnuson, Defendants.**

**No. 65 Civil 1512.**

United States District Court,
S. D. New York.

May 27, 1971.

**258**

Frederick B. Boyden, New York City, trustee.

Kevin Thomas Duffy, Regional Admr., Securities and Exchange Commission, New York City, David Ferber, Sol., Richard E. Nathan, Sp. Counsel, Michael A. Macchiaroli, Atty., Securities and Exchange Commission, Washington, D. C., for plaintiff.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant, Golconda Mining Co., Theodore W. Striggles, New York City, of counsel.

Whitman & Ransom, New York City, for defendant, Harry F. Magnuson, Robert S. Newman, New York City, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

On October 30, 1969, a consent judgment was entered under which, among other matters, the defendants were enjoined from future violations of the anti-fraud provisions of the federal securities laws. The action had been commenced by the Securities and Exchange Commission, based upon transactions engaged in by the defendants as corporate insiders in the securities of Hecla Mining Company and Lucky Friday Silver-Lead Mines Company, which the Commission charged were in violation of section 10(b) of the Securities Exchange Act of 1934[1] and Commission Rule 10b–5.[2] The complaint alleged that through the purchasing of Hecla Mining securities by both defendants and the sale of Lucky Friday Silver-Lead Mines securities by defendant Golconda, the defendants profited by the use of inside information with respect to a proposed merger of the two companies, of which the defendant Magnuson was a director.

Pursuant to the judgment, the defendants deposited with a Trustee appointed by the Court a total of $47,092.21, representing the profits the defendants had realized as a result of the alleged transactions during the period from June 28, 1963, through September 10, 1963. The judgment required that the Trustee use his best efforts to locate the persons with whom the defendants had the transactions during that period and to pay them stipulated amounts per share and interest out of the deposited funds.

The Trustee was most diligent in his efforts to locate those entitled to payment. Despite the cooperation of SEC investigators, brokers, specialists in the stock, Stock Exchange officials and his own written communications, tracers and newspaper advertisements, the Trustee was unable to locate all persons entitled to share in the funds. Those claimants who filed verified claims as set forth in the Trustee's first report received their payments, and the Trustee was paid for his services and expenses which the judgment provided the defendants were to pay as determined by the Court. The order which directed the foregoing distributions and payments also directed that with respect to those persons who had not filed claims the Trustee make further efforts to locate them. The Trustee has pursued such further efforts by independent investigation, correspondence, telephone talks and face-to-face meetings with potential claimants. The Trustee has now filed a further report indicating that additional claimants have filed who are entitled to reimbursement under the terms of the judgment entered herein. However, it appears that there still remain outstanding a number of potential claimants who may be entitled to reimbursement from the funds that will remain in hand after

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5.

payment to those who have filed additional verified claims and allowances of additional fees and expenses incurred in the further effort to locate all potential claimants. The Trustee now seeks a direction by the Court as to disposition of the unclaimed balance. The defendants ask that the sum be returned to them, and the SEC opposes.

■ The judgment provides that "* * * should the trustee show to the satisfaction of the Court that, after reasonable attempts to comply fully with the requirements hereof, he has been unable to locate any persons entitled to make payment as described herein, * * * the amount due all such persons who have not been paid shall be returned [to the defendants]; provided, however, that the amount returned to either defendant shall not exceed the amount which it or he has paid or is required to pay for the expenses of the trustee or as a fee awarded to the trustee; and, should any amount remain out of the funds deposited with the trustee that amount, after the foregoing disposition of funds has been completed, shall be paid as the Court may direct * * *." Thus, under the judgment, in the event funds remain undistributed, the defendants are entitled to reimbursement therefrom for the sums paid to the Trustee for his fees and expenses, but as to the balance remaining, the disposition is subject to the Court's discretion. But entirely apart from this specific provision, the Court possesses the necessary power to fashion an appropriate remedy in instances of violations of provisions of the securities acts.[3]

■ While it is true that the stipulation under which the judgment was entered contained a provision that it was not to be construed as an admission by the defendants that they violated section 10(b) of the Securities Exchange Act or Rule 10b–5 thereunder, each defendant represented that the specific transactions set forth on an attached list represented the only transactions within the period in question involving the sale or purchase by the defendants of the securities which were the subject of the Commission's suit. The terms of the judgment required the defendants to disgorge the profits realized as a result of those specific transactions which the Commission contended were fraudulent. Thus, despite the self-serving statement of disavowal of wrongful conduct, a realistic approach requires recognition that in fact the defendants profited by the transactions, a fact underscored by the injunction against them from engaging in future fraudulent acts and practices of the type of violation charged in the complaint. That the defendants profited by their insider positions is beyond serious challenge. The circumstance that some of the claimants cannot presently be found does not justify turning back to them their ill-gotten profits.

This litigation is not a private affair involving those with whom the defendants had the transactions. The investors were not parties to the suit. It was commenced by the SEC as a law enforcement agency in the public interest and to enforce the securities laws. The injunction against future violations, while of some deterrent force, is only a partial remedy since it does not correct the consequences of past conduct. To permit the return of the unclaimed funds, a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement of the securities acts is to be achieved.[4] One requirement of such en-

3. *See* Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 386, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); SEC v. Texas Gulf Sulphur Co., 312 F.Supp. 77, 92–93 (S.D. N.Y.), *appeal docketed*, No. 35143 (2d Cir. July 16, 1970); Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333, 1341 (S.D.N.Y.1969).

4. As the New York Court of Appeals recently stated, "there can be no justification for permitting officers and directors * * * to retain for themselves profits which, it is alleged, they derived solely

forcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.[5]

What this Court said recently in the context of a different but related type of securities act violation reflects the general policy of strict enforcement of the act for its deterrent force:

"In order to effectuate [the] congressional purpose, the courts have sought 'to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary * * * and the faithful performance of his duty,' and accordingly have steadfastly required the insider to disgorge 'every possible penny of profit out of such transactions.' * * * The command of the statute is clear; it should not be hobbled by permitting settlements for less than the amount of the profits. The directors either realized or did not realize the profits within the six-months period—if they did, they must pay these to the corporation, as the statute provides; if they did not, then nothing is owed." [6]

The Trustee is directed to make payment to the claimants who are entitled to reimbursement, as recommended in paragraphs 6(a), (b) and (c) of his further report dated May 13, 1971, and after deducting the sums expended by him for advertising and locating additional claimants, as shown on the exhibits attached to his aforesaid report, and an additional fee to him for services rendered since his last report, which is hereby allowed in the sum of $3,800, and out of pocket disbursements of $71.83, the Trustee is directed to deposit the remaining balance in the Registry of this Court, to be held pursuant to 28 U.S.C., sections 2041 and 2042, for the benefit of those persons who are entitled to payment under the final judgment, or for the benefit of their successors in interest.[7]

---

from exploiting information gained by virtue of their inside position as corporate officials." Diamond v. Oreamuno, 24 N.Y.2d 494, 498–499, 301 N.Y.S.2d 78, 81, 248 N.E.2d 910, 912 (1969).

5. SEC v. Texas Gulf Sulphur Co., 312 F. Supp. 77, 92–93 (S.D.N.Y.), *appeal dock-* *eted,* No. 35143 (2d Cir. July 16, 1970). *See also* Comment, 65 Mich.L.Rev. 944, 963 (1967).

6. Lewis v. Wells, 325 F.Supp. 382 (S.D. N.Y.1971).

7. *Cf.* SEC v. S & P National Corp., 285 F.Supp. 415 (S.D.N.Y.1968).