[L.A. No. 30881. Feb. 28, 1979.]

HARRELL E. FLETCHER, Plaintiff and Appellant, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant and Respondent.

GERTRUDE CHERN, Plaintiff and Appellant, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant and Respondent.[1]

---

[1]These two cases present identical issues and were consolidated at the trial court level; the trial court entered a single order applicable to both cases and a single notice of appeal also applicable to both matters was filed. For convenience, the opinion discusses only the *Fletcher* case.

## Counsel

Lawrence I. Schwartz and Michael R. Palley for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton and Paul M. Reitler for Defendant and Respondent.

## Opinion

**TOBRINER, J.**—Two years ago, in *Chern* v. *Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310], our court determined that the industry-wide banking practice of computing so-called "per annum" interest rates on the basis of a 360-day year constituted an unfair trade practice under Business and Professions Code section 17500.[2] We concluded that the practice as such, could, and should, be enjoined. In the instant case, instituted several years prior to our *Chern* decision, plaintiff challenged an identical practice of interest computation by

---

[2]Section 17500 states in relevant part: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent . . . to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or

another bank. Plaintiff sought, on behalf of himself and other similarly situated borrowers, restitution of the sums obtained through the use of this unfair business practice and damages for breach of contract and violation of the unfair trade practice statutes.

Subsequent to this court's filing of the decision in *Chern,* defendant bank moved in the trial court for dismissal of the suit as a class action. The trial court granted defendant's motion after a hearing, relying primarily on its conclusion that, with respect to the prayer for monetary damages, "the knowledge of each borrower . . . must be determined separately for each loan. . . ." Because the plaintiff class numbered over 50,000 persons, the court concluded that if a separate determination were necessary for each class member, maintenance of the action as a class action would be neither feasible nor efficient. The court accordingly ordered that the action on behalf of the class be dismissed.

Plaintiff appeals from the trial court order, contending that the court abused its discretion in foreclosing the suit from going forward as a class action. As we explain, although the trial court properly refused to permit plaintiff's claim for breach of contract to proceed as a class action, the trial court, resting on an erroneous legal assumption, improperly refused to permit plaintiff's claim of an unfair trade practice to proceed as a class action. We recognize that proof of each individual borrower's lack of knowledge may be required to sustain a recovery under the breach of contract theory. A trial court, however, pursuant to Business and Professions Code section 17535, possesses the authority to order restitution of moneys, in the absence of individualized proof of lack of knowledge, in order to preclude an entity which has engaged in an unlawful trade practice from improperly profiting from its wrongdoing. As the trial court's denial of class action status in the instant case rested upon an erroneous legal basis, we conclude that the order dismissing the class action should be reversed.

1. *The facts and proceedings below.*

On January 6, 1969, plaintiff Fletcher contracted with defendant Security Pacific National Bank for a short-term commercial loan. The

other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such . . . services, . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

promissory note executed in the transaction specified a 7¼ "per cent per annum" interest rate on the loan. Unbeknownst to plaintiff, such interest was to be calculated on the basis of a 360-day year, resulting in a small increase in the annual percentage rate.

On January 9, 1973, plaintiff commenced the instant action on behalf of himself and as representative of a class of approximately 50,000 similarly situated borrowers, alleging that defendant's practice of quoting interest calculated on the basis of a 360-day year as a "per annum" rate constituted a breach of contract and a violation of statutory unfair trade practice prohibitions. Plaintiff contended that a class action was essential to a full and fair adjudication of the issues presented in the complaint.

To support his contention favoring class action treatment for the instant complaint, plaintiff cites 14 issues of liability and methods of relief common to the class, and urges as well the impracticality of individual actions to resolve the controversy. Given the relatively small potential recovery (plaintiff alleges that he himself was overcharged $2.56), and a lack of awareness of legal rights on the part of most borrowers, plaintiff posits the infeasibility of individual actions. Moreover, if class members should see fit to institute legal actions to vindicate their alleged rights, the resultant multiplicity of suits would impose an egregious burden on the courts, and might conclude with inconsistent resolutions of the controversy. Finally, although individual recovery is potentially small, plaintiff contends that a class action is essential in order to assure that defendant does not retain the gains of its allegedly illicit practice.

Defendant takes exception to plaintiff's claim for class status, contending that individual issues predominate over the common questions. Relying on our decision in *Chern* v. *Bank of America, supra,* 15 Cal.3d 866, the trial court agreed, and dismissed the suit as a class action.

2. *The trial court did not abuse its discretion in finding that the class action could not be maintained on the claim for breach of contract.*

In *Chern, supra,* we considered a challenge to an identical practice of calculating "per annum" interest rates on a 360-day year. Plaintiff in *Chern,* as does plaintiff in the instant case, based a claim for damages and injunctive relief on breach of contract and unfair trade practice theories.

In *Chern,* however, unlike the instant case, the named plaintiff conceded that at the time she entered into the loan transaction with the bank she *knew* that the "per annum" interest rate quoted by the bank would actually be computed upon a 360-day year. Although Chern protested the bank's use of the practice, she nevertheless entered into the agreement with full knowledge of the usage, and, consequently, of the meaning that the bank gave to the terms of the loan agreement.

In the initial portion of our *Chern* decision, we held that while a borrower who had no prior knowledge of the 360-day year computation practice might mount a valid breach of contract claim against the bank, plaintiff, who *had* full knowledge of the meaning of the "per annum" interest rate in the contract provision, could not prevail in such a breach of contract action. Moreover, since plaintiff herself could muster no valid contract claim, we concluded that she could not properly pursue a class action on behalf of those borrowers who did not have knowledge of the banking practice. Accordingly, we affirmed the trial court decision dismissing plaintiff's class action for breach of contract.

Plaintiff in the instant case emphasizes that he has alleged that he did not have knowledge of the bank's practice, and thus that the critical defect that we found in *Chern* is not present here. Although plaintiff, unlike Chern, may be a proper class representative, that fact of itself does not demonstrate that the trial court erred in determining that, despite the presence of a proper representative, the contract claim should not properly proceed as a class action.

In reaching the conclusion that the action should not be pursued as a class action, the trial court relied principally upon our holding in *Chern* that a borrower's prior knowledge of the banking practice would defeat a claim for damages for breach of contract. Finding that defendant had freely explained its method of interest computation when asked, and that the practice of computing interest on the basis of a 360-day year had been followed for many years, the court inferred that "a number of" the estimated 50,000 class members would have such prior knowledge of the banking practice. The court further found that there was no ready method, other than examining each of the individual borrowers, to determine the number and identity of the class members who had valid contract claims. Given the large number of potential class members, the court found that in this context of contract the individual issues of knowledge predominated over the common questions of law, that the

class was not readily ascertainable, and consequently that the action should not be maintained as a class action.

Under these circumstances, the trial court did not abuse its discretion in refusing to permit the contract claim to proceed as a class action.

3. ■■■ *Under Business and Professions Code section 17535, once an unfair trade practice has been established, a trial court has discretion to order restitution without requiring proof of each class member's lack of knowledge as to that unfair trade practice.*

The trial court in the present case refused to permit plaintiff's claim of an unfair trade practice under Business and Professions Code section 17535 to proceed as a class action on the ground that proof of each individual borrower's lack of knowledge was required to sustain recovery of restitution under that section. As we shall explain, however, the trial court's denial of such class action status rested upon an erroneous legal basis. The general equitable principles underlying section 17535 as well as its express language arm the trial court with the cleansing power to order restitution to effect complete justice. Accordingly the statute clearly authorizes a trial court to order restitution in the absence of proof of lack of knowledge in order to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains.

In finding a class action infeasible in the present case, the trial court drew no distinction between the cause of action based on plaintiff's contract and the count based on defendant's alleged unfair trade practices. In *Chern* itself, however, we sharply distinguished between the two theories, specifically holding that although a plaintiff's knowledge of defendant's practice might bar a contract suit, it would not prevent an action under section 17535. Thus, *Chern* held that plaintiff can establish, without regard to the knowledge of individual borrowers, that defendant has engaged in an unfair trade practice.

Defendant cannot, and does not, seriously contest this position. It admits that its practice might have been found to be an unfair trade practice and that plaintiff might be entitled to injunctive relief.[3] Nevertheless it contends that in order to obtain any monetary recovery under section 17535, plaintiff must present individual proof that each

---

[3]We did not discuss a claim for restitution in *Chern*.

allegedly defrauded consumer seeking restitution did not *know* of the fraud, and that this requirement destroys the basis for a class suit.

The statutory language of section 17535, however, does not support defendant's position. Section 17535 provides, in broad and sweeping language: "Any person, corporation, [or] firm . . . which violates . . . this chapter may be enjoined by any court of competent jurisdiction. *The court may make such orders . . . as may be necessary to prevent the use or employment . . . of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.*" (Italics added.)[4]

■ By this language the Legislature obviously intended to vest the trial court with broad authority to fashion a remedy that would effectively "prevent the use . . . of any practices which violate [the] chapter [proscribing unfair trade practices]" and deter the defendant, and similar entities, from engaging in such practices in the future. The requirement that a wrongdoing entity disgorge improperly obtained moneys surely serves as the prescribed strong deterrent.

Defendant argues, however, that the final sentence of section 17535 authorizes restitution only upon proof that the money which is to be returned has in fact been obtained by the defendant as a direct result of the unlawful business practice. Emphasizing that the statute refers to money "which may have been acquired by means of any . . . [illegal] practice," defendant asserts that individual proof of each transaction must be established to determine if the money was obtained by such means.

---

[4]Business and Professions Code section 17535 states more fully:

"Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

"Actions for injunction under this section may be prosecuted by the Attorney General . . . in the name of the people of the State of California . . . or by any person for the interests of itself, its members or the general public."

Defendant's reading of the statute overlooks the true breadth of the section. Contrary to defendant's assertion, section 17535 authorizes restitution not only of any money which has been acquired by means of an illegal practice, but further, permits an order of restitution of any money which a trial court finds "*may have been* acquired by means of any . . . [illegal] practice." (Italics added.) This language, we believe, is unquestionably broad enough to authorize a trial court to order restitution without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice in each transaction. Hence defendant's argument clearly fails to defeat the class action.

Secondly, inasmuch as "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society" (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [91 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]), we must effectuate the full deterrent force of the unfair trade statute. Indeed our concern with thwarting unfair trade practices has been such that we have consistently condemned not only those alleged unfair practices which have in fact deceived the victims, but also those which are likely to deceive them. (See, e.g., *Chern* v. *Bank of America, supra,* 15 Cal.3d 866, 876; *Payne* v. *United California Bank* (1972) 23 Cal.App.3d 850, 856 [100 Cal.Rptr. 672]; *People* ex rel. *Mosk* v. *Lynam* (1967) 253 Cal.App.2d 959 [61 Cal.Rptr. 800]; *In re Application of O'Connor* (1927) 80 Cal.App. 647, 652 [252 P. 730]; see also 28 Ops.Cal.Atty.Gen. 277, 279 (1956).) We do not deter indulgence in fraudulent practices if we permit wrongdoers to retain the considerable benefits of their unlawful conduct.

As one court has stated, "The injunction against future violations, while of some deterrent force, is only a partial remedy since it does not correct the consequences of past conduct. To permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." (Fns. omitted.) (*Securities & Exchange Com'n* v. *Golconda Mining Co.* (S.D.N.Y. 1971) 327 F.Supp. 257, 259-260. See also *Securities & Exchange Com'n* v. *Manor Nursing Ctrs., Inc.* (2d Cir. 1972) 458 F.2d 1082, 1103-1105; *Securities and Exchange Com'n* v. *Texas Gulf Sulphur Co.* (2d Cir. 1971) 446 F.2d 1301, 1307-1308, cert. den., 404 U.S. 1005 [30 L.Ed.2d 558, 92 S.Ct. 561].) Thus a class action may proceed, in the absence of individualized proof of lack of knowledge of the fraud, as an effective means to accomplish this disgorgement.

In a similar context we have expressed our concern that wrongdoers not retain the benefits of their misconduct. In *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], a class action instituted to recover as damages overcharges allegedly made by the defendant, we noted that "It is more likely that, absent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover the amount of their overpayments is to be preferred over the foregoing alternative. [Fn. omitted.]" (67 Cal.2d at p. 715. See also Comment, *Private and Public Remedies for Fraudulent Business Practices in California: The Importance of a Strong Public Role* (1973) 6 Loyola L.A.L.Rev. 312; Comment, *Fraudulent Advertising: The Right of a Public Attorney to Seek Restitution for Consumers* (1973) 4 Pacific L.J. 168.)

 Thus in the present case the trial court may order restitution to the plaintiff class in order to foreclose defendant's retention of any wrongful gains. Because of the relatively small individual recovery at issue here, the court may find that a denial of class status in the present suit by the requirement of proof of lack of individual knowledge would, as a practical matter, insulate defendant from *any* damage claim. Section 17535 authorizes a trial court to order a defendant, who carefully exploited an unfair trade practice so that the individual victims suffered only minor losses, to disgorge the resulting large and illicit sum of money. (See *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 387 [134 Cal.Rptr. 393, 556 P.2d 755] (conc. opn. of Tobriner, J.).)

 Finally, the basic equitable principles underlying section 17535 arm the trial court with broad discretionary power to order restitutionary relief in the present case in the absence of individualized proof of lack of knowledge. A court of equity may exercise its full range of powers "in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved." (*People* v. *Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191].)[5] As we stated recently, "Even in the absence of the specific authorization contained in section 17535, a trial court has the inherent power to order restitution as a form of ancillary relief." (*People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 19, fn. 9 [141 Cal.Rptr. 20, 569 P.2d 125]. ██ See also *United Farm*

[5]Defendant cites *People* v. *Superior Court (Jayhill Corp.)*, *supra*, 9 Cal.3d 283, for the proposition that proof of each individual borrower's lack of knowledge is required to sustain an order of restitution under section 17535. Defendant points specifically to our holding in *Jayhill* that "in an action . . . under sect[i]on 17535 a trial court has the inherent power to order, as a form of ancillary relief, that the defendants make or offer to

*Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334, 344-345 [120 Cal.Rptr. 904].)[6]

■ Thus we conclude that the trial court erred in determining that the question of each borrower's individual knowledge constituted an insuperable obstacle to the imposition of a class restitution remedy under section 17535. Under the section, the court retains the authority to order restitution without an individualized showing on the knowledge issue if the court determines that such a remedy is necessary "to prevent the use or employment" of the unfair practice at issue in this case. On remand, the court should determine the appropriateness of the requested relief in light of the statutory language and purpose.

We recognize, of course, that the trial court may determine in subsequent proceedings that the maintenance of the present suit as a class action is precluded on other grounds. Under section 17535, *"any person acting for the interests of itself, its members or the general public"* (italics added) may bring an action for injunction to enjoin violations of the unfair trade practice statute. As we explained in *People* v. *Superior Court*

---

make restitution to the customers *found to have been defrauded."* (Italics added.) (9 Cal.3d 283, 286.) Defendant contends that only after proof of actual defrauding will any customer be "found to have been defrauded"; thus the issue of individual knowledge determines the right to restitutionary recovery.

In *Jayhill* the Attorney General instituted a civil action against various sellers of encyclopedias by door-to-door solicitation, charging false and misleading advertising in violation of the unfair business practice statute. The complaint prayed, inter alia, that defendants be ordered to offer to each customer who had been solicited by a fraudulent sales presentation the opportunity to rescind his contract and obtain a refund.

Our decision in *Jayhill*, however, did not address the issue of *individual knowledge*. Since the underlying action in *Jayhill* was instituted by the Attorney General not only on behalf of those victimized by the alleged acts of unfair competition, but also on behalf of the people of the state generally, the question of individual knowledge was not raised. Thus, contrary to defendant's contention, our holding in *Jayhill* does not require individualized proof of lack of knowledge to sustain a trial court's order of restitution.

[6]At the time the Attorney General filed his complaint in *People* v. *Superior Court (Jayhill), supra*, section 17535 provided only that false or misleading advertising "may be enjoined" in an action by the Attorney General or by "any person acting for the interests of itself, its members or the general public." In 1972, the Legislature explicitly recognized the trial court's inherent equitable power to order restitution as a form of ancillary relief in such a proceeding, by amending section 17535 to declare that "The court may make such orders or judgments . . . which may be necessary to restore to any person in interest any money or property . . . which may have been acquired by means of any practice in this chapter declared to be unlawful." (Stats. 1972, ch. 244, § 1, p. 494.) As we stated in *Jayhill*, "In light of its legislative history, we hold that the amendment was intended not to create a new power in the trial court but simply to clarify existing law on the point." (9 Cal.3d 283, 287 fn. 1.) Thus, contrary to the suggestion of the dissenting opinion of Justice Clark, plaintiff is not barred from seeking relief under section 17535 simply because the 1972 amendment of section 17535 became effective in March 1973, two months after plaintiff commenced his action.

*(Jayhill), supra,* 9 Cal.3d 283, the trial court has authority to order restitution as a form of ancillary relief in such an injunctive action. Although an individual action may eliminate the potentially significant expense of pretrial certification and notice, and thus may frequently be a preferable procedure to a class action, the trial court may conclude that the adequacy of representation of all allegedly injured borrowers would best be assured if the case proceeded as a class action. Before exercising its discretion, the trial court must carefully weigh both the advantages and disadvantages of an individual action against the burdens and benefits of a class proceeding for the underlying suit.

*Conclusion.*

In *Chern* v. *Bank of America, supra,* 15 Cal.3d 866, we determined that the practice of quoting interest calculated on the basis of a 360-day year as "per annum" constituted a violation of Business and Professions Code section 17500. In the instant case, plaintiff in a class suit seeks restitution of sums obtained through defendant's use of this unfair practice. As we have explained, section 17535 clearly authorizes a trial court to order restitution in the absence of proof of the individual borrower's lack of knowledge of the alleged fraud if the court determines that such a remedy is necessary to deter future violations of the unfair trade practice statute or to foreclose the defendant's retention of any ill-gotten gains. As we have explained, in the absence of such a remedy, consumers who have been defrauded by a defendant's unlawful trade practice frequently would be effectively denied any realistic remedy and a wrongdoing defendant would often be totally insulated from any damage claim. The fact that *some* members of the class may have been informed of the alleged fraud should not in itself preclude the trial court from affording a remedy for recovery of those who had no such information.

Thus we hold that the trial court in the instant case erroneously determined that an order of restitution under section 17535 must be predicated upon individualized proof of lack of knowledge. Because the trial court's denial of class action status in the present case rested upon this erroneous legal basis, we conclude that its action constituted an abuse of its discretion, and, accordingly, we reverse and remand for reconsideration and the exercise of its discretion in light of this opinion.[7]

---

[7]Contrary to the suggestion of the dissenting opinion of Justice Richardson, our decision does not hold that all banks are necessarily required to make restitution without regard to individual borrowers' knowledge. Rather, we simply hold that, under section 17535, a trial court is empowered to order such restitution if it finds that such an order is necessary to prevent the use or employment of defendant's unlawful trade practice. On remand, the trial court must determine whether that remedy is appropriate in this case.

The trial court order dismissing the class actions for breach of contract is affirmed. The order dismissing the class actions for restitution under Business and Professions Code section 17535 is reversed. Plaintiffs shall recover costs.

Bird, C. J., Mosk, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. It is important at the outset to express in clear terms the import of the majority's holding. As the majority explains, in past years it was an industry-wide banking practice to advertise annual interest rates on bank loans on the basis of a 360-day year, resulting in a slight understatement of the actual 365-day rate. Because this practice was potentially deceptive to the public, we unanimously held in *Chern* v. *Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310], that the practice constituted false and misleading advertising (Bus. & Prof. Code, § 17500) which could be enjoined in an appropriate case (*id.,* § 17535; former Civ. Code, § 3369, subd. 2). We further held in *Chern,* however, that borrowers who entered into loans with prior knowledge of this practice could not recover damages, because such persons were not actually misled by the practice nor induced thereby to enter into loan transactions. (15 Cal.3d at pp. 873-875.) The majority herein now holds, contrary to *Chern,* that banks throughout this state may be required to refund *to each borrower* the excess interest paid (presumably, the difference between the 360-day rate and the 365-day rate) *whether or not the borrower accepted the loan with full and prior knowledge of the true interest rate.* There is no basis whatever for extending such relief to one who knowingly and with open eyes voluntarily entered into such a loan transaction.

The majority attempts to justify this astonishing result on the ground that, under section 17535 of the Business and Professions Code, the trial courts are empowered (in the words of the majority) "to order restitution in the absence of proof of lack of knowledge in order to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains." (*Ante,* p. 449.)

The majority's reliance on section 17535 is wholly misplaced. That section permits the courts to make orders "as may be *necessary* to prevent . . . [future] practices which violate this chapter, or which may be *necessary* to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any [unlawful]

practice . . . ." (Italics added.) The majority's award of "restitution" to knowledgeable borrowers is unnecessary to accomplish either statutory purpose.

First, as to deterrence of future violations, the injunctive relief available under our *Chern* decision is entirely sufficient to protect the public from continued deceptive advertising. Penalizing banks for engaging in a practice which has not yet been shown to be actually deceptive to anyone seems to me wholly unnecessary and vindictive. Second, restitution is not necessary to restore any monies ("ill-gotten gains") acquired by banks through deceptive practices, because persons who were informed in advance of the true rate of interest cannot have been "deceived" by the bank's advertising.

The point was aptly expressed by the Court of Appeal in its vacated opinion in this case: "The issue of borrower knowledge . . . is the critical issue in the case; if it were shown that an individual had such knowledge his damages would not merely be limited, they would be nonexistent."

I would affirm the order dismissing the class action.

Manuel, J., concurred.

**CLARK, J.**—I dissent.

I

The instant action arises upon appeal from order dismissing class action. The majority opinion recognizes the trial court did not abuse its discretion in finding the class action could not be maintained on the claim for breach of contract. (*Ante,* pp. 447-449.) The majority opinion concludes that the action may be maintained as a class action to seek for the benefit of the class the relief provided by Business and Professions Code section 17535. (*Ante,* p. 449 et seq.)

However, no class action is necessary for this purpose, because any appropriate relief for plaintiff and his class may be obtained by a single individual action. Section 17535 provides in its entirety: "Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. *The court may make such orders or judgments, including the appointment of a receiver, as may be*

*necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.* [¶] Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, *county counsel, city attorney, or city prosecutor* in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public." (Italics added; the underscored material was added by the Leg. in 1972; Stats. 1972, ch. 244, § 1, p. 494; Stats. 1972, ch. 711, § 3, p. 1300.)

It is apparent from the language of the section that an individual's right to bring an action and to obtain relief for others is the same as that of the Attorney General. In *People* v. *Superior Court (Jayhill)* (1973) 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191], this court held that in an action by the Attorney General the trial court—within its inherent equitable powers—could order the defendants to "make or offer to make restitution to the customers found to have been defrauded."[1]

Because plaintiff in an individual action may recover for his class any or all of the relief appropriate under the section, there is no reason to allow or to compel the plaintiff to incur the great expenditure of money and time incident to a class action. The costs of maintaining a class action include certification and notice to permit class members to opt out or to intervene in the action prior to trial. Although proof problems and expenses of notice after trial conceivably could be the same whether the action is maintained by an individual or by class, it is evident that savings of pretrial certification and notice expenses may be great. In the instant case it is estimated there are 50,000 borrowers potentially within plaintiff's class, and the cost of identifying them in accordance with any class certification and of notifying them may be several dollars per borrower.

Moreover, both *Jayhill* (9 Cal.3d at p. 286) and section 17535 merely authorize trial courts to make restitutionary orders, leaving to the sound

[1]Although the action in *Jayhill* arose prior to the 1972 amendment to section 17535, it was held that the amendment "was intended not to create a new power in the trial court but simply to clarify existing law on the point." (9 Cal.3d at p. 287, fn. 1.)

discretion of the court the determinations whether the case is an appropriate one for restitution and, if so, who should receive restitution under its order. Making such discretionary determinations before would-be class members are notified furthers the orderly and economical administration of justice.

We have repeatedly emphasized that the class action is based on considerations of "necessity and convenience" and that "the representative plaintiff must show substantial benefit will result both to the litigants and to the court. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 458-460 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 811 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) As pointed out in *City of San Jose,* 'despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.] It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove nonbeneficial.' (12 Cal.3d at p. 459; fn. omitted.)" (*Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755].)

In an individual action under section 17535, plaintiff can obtain all appropriate relief authorized by that section for himself and his proposed class. The convenience of the litigants and court is not served by permitting or requiring plaintiff to march to the courthouse with his proposed 50,000 associates when he can as effectively go to the courthouse alone. Absent necessity and convenience, the proposed class action under section 17535 does not benefit the litigants or the court. Accordingly, we should affirm the order dismissing class action.

The majority recognize that relief afforded by section 17535 for the alleged class may be obtained in an individual as well as class action, but urge that the trial court has discretion to permit the action to proceed as a class action if it concludes that "the adequacy of representation of all allegedly injured borrowers would best be assured." (*Ante,* p. 454.) However, whether plaintiff's counsel represents a class or merely the individual plaintiff, he is in the same position in urging that the court assess a discretionary penalty of restitution, and class representation does not warrant the huge expenditure necessary to maintain class action.

In any event the trial court has already exercised its discretion. Denying class action, the court found that there are approximately 50,000 potential class members, that during the period involved defendant made approximately 1,529,000 short term commercial loans, and that on some portion of the loans, the 360-day method was not used. The court determined: "1. This action may not be maintained as a class action because the members of the purported class are not readily ascertainable. [¶] 2. Individual questions of law and fact will predominate over common issues of law and fact, if any, at the trial of this action, inasmuch as the knowledge of each borrower, as well as his right to recovery *under certain of the causes of action herein,* must be determined separately for each loan. [¶] 3. The maintenance of this action as a class action will not result in substantial economies of time, effort and expense, and is not a superior method for the fair and efficient adjudication of the controversy. [¶] 4. The class is so numerous and the questions of law and fact are so diverse that joinder of all members in a class action, or otherwise, is impracticable. [¶] 5. There is no advantage to be realized from concentrating the litigation of these various claims in this particular forum by means of a class action." (Italics added.)

Because of the italicized language, it is apparent that the knowledge issue precluded class action only as to "certain of the causes of the action herein," and contrary to the majority opinion, did not preclude class action as to all causes. The plain implication is that other considerations precluded class action as to other causes.

The majority recognize in part 2 of the opinion that the knowledge issue precluded class contractual claims. The trial court also determined that useful purposes would not be served by permitting the other causes to proceed as a class action.

We may not presume error. An order of the trial court is presumed correct, and error must be affirmatively shown. (6 Witkin, Cal. Procedure (2d ed. 1971) pp. 4225-4226.) There has been no showing that the trial court abused its discretion or refused to exercise discretion, and again the order dismissing class action should be affirmed.

II

Even assuming class action could proceed under section 17535, the instant one must fail for lack of a representative plaintiff because plaintiff cannot bring the action established by the majority.

As pointed out above, in *People* v. *Superior Court (Jayhill), supra,* 9 Cal.3d 283, 286-287, this court held that in actions under section 17535 trial courts have inherent power to order restitution to *defrauded* customers and that the 1972 amendment to the section merely clarified existing law. *Jayhill* is of no help to the majority because under the equitable doctrine enunciated there, it must be determined who has been defrauded and such determination would involve the same individual factual determinations the majority hold would bar a contract class action. Repudiating *Jayhill (ante,* pp. 450, 452, fns. 4, 5), the majority in effect tell us that the 1972 amendment to section 17535 permits a broader restitution order than was recognized in *Jayhill.* However, plaintiff's cause of action and those of many, if not all, of the class sought to be represented cannot be brought under the 1972 amendment..

According to the complaint, on 6 January 1969, plaintiff borrowed $30,000 from defendant, executing a note promising repayment at the rate of 7¼ percent interest per annum. Defendant also advertised and made statement of per annum interest rates. On 6 February 1969, plaintiff repaid the loan with interest, as charged by defendant, computed on the basis of a 360-day year.

On 9 January 1973 plaintiff commenced the instant action on behalf of himself and similarly situated borrowers.

The 1972 amendment to section 17535 did not become effective until 7 March 1973—more than four years after plaintiff repaid his loan with the now disputed interest and almost two months after the instant lawsuit was filed. Therefore, plaintiff may not receive restitution under the 1972 amendment; restitution can be awarded to him if at all under *Jayhill* by showing he was defrauded—was unaware of the banking practice. (The majority concede the trial court did not abuse its discretion in denying class action if knowledge was critical to recovery.)

" 'The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent. [Citations.]' (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113].)" (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 874 [127 Cal.Rptr. 110, 544 P.2d 1310].) Because plaintiff cannot obtain restitution under the 1972 amendment to section 17535, the action must be dismissed as determined by the trial court.

The order dismissing class action should be affirmed.