111 Cal.Rptr.2d 395 (2001)
91 Cal.App.4th 1179
Jose E. CRUZ et al., Plaintiffs and Respondents,
v.
PACIFICARE HEALTH SYSTEMS, INC., et al., Defendants and Appellants.
No. A093002.
Court of Appeal, First District, Division Two.
August 28, 2001.
Review Granted October 31, 2001.
*396 Cooley, Godward, Martin S. Schenker, San Francisco, William E. Grauer, Christopher R.J. Pace, James V. Fazio, San Diego, for Defendants and Appellants.
The Furth Firm, Frederick P. Furth, Michael P. Lehmann, San Francisco, Ben Furth, for Plaintiffs and Respondents.
KLINE, P.J.
PacifiCare Health Systems, Inc., and its subsidiary, PacifiCare of California (collectively PacifiCare), appeal from an order denying their motion to compel arbitration of the claims asserted in Jose E. Cruz's unfair business practices complaint. PacifiCare contends that all Cruz's claims are subject to arbitration and, in the alternative, if some are not, that judicial proceedings should be stayed pending arbitration of those that are.

FACTUAL AND PROCEDURAL BACKGROUND
Cruz filed a class action against PacifiCare alleging violations of Business and Professions Code sections 17200 (unfair competition) and 17500 (false advertising) and the Consumer Legal Remedies Act (CLRA; Civ.Code, § 1750 et seq.), as well as unjust enrichment. The gravamen of his complaint is that undisclosed financial incentives to PacifiCare's providers significantly reduce the quality of health care its patients receive.
PacifiCare moved to compel arbitration of Cruz's claims pursuant to the arbitration clause in its health plan agreement with his employer[1] and the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). *397 After a hearing, the trial court denied the motion to compel arbitration. PacifiCare filed a timely notice of appeal (Code Civ. Proc., § 1294, subd. (a)).

DISCUSSION

A. Arbitrability of Claims for Injunctive Relief.
"In enacting § 2 of the [Federal Arbitration] Act,[2] Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Southland Corp. v. Keating (1984) 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1.) The United States Supreme Court "has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual if the parties so intend, and that in doing so, the parties do not forego substantive rights, but merely agree to resolve them in a different forum. [Citations.]" (Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1075, 90 Cal. Rptr.2d 334, 988 P.2d 67. (hereafter Broughton).) However, "That is not to say that all controversies implicating statutory rights are suitable for arbitration." (Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc. (1985) 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (hereafter Mitsubishi).) For example, "the United States Supreme Court recognizes an `inherent conflict' exception to the arbitrability of federal statutory claims. [Citation.]" (Broughton, supra, 21 Cal.4th at pp. 1082-1083, 90 Cal.Rptr.2d 334, 988 P.2d 67.) That is, if Congress intended to prohibit waiver of a judicial forum for a particular statutory claim, such an intent will be deducible "from an inherent conflict between arbitration and the statute's underlying purposes." (Shearson/American Express, Inc. v. McMahon (1987) 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185.)
In Broughton, supra, 21 Cal.4th at page 1083, 90 Cal.Rptr.2d 334, 988 P.2d 67, our Supreme Court recognized that the United States Supreme Court's "inherent conflict" cases all concerned federal statutory claims, and thus the inquiry was into the Congressional intent behind those statutes. "But although the court has stated generally that the capacity to withdraw statutory rights from the scope of arbitration agreements is the prerogative solely of Congress, not state courts or legislatures [citation], it has never directly decided whether a legislature may restrict a private arbitration agreement when it inherently conflicts with a public statutory purpose that transcends private interests." (Ibid.) Accordingly, the Broughton court asked whether there is an inherent conflict between arbitration and the statute at issue there, California's Consumer Legal Remedies Act (id. at p. 1077, 90 Cal. Rptr.2d 334, 988 P.2d 67), and concluded that such a conflict does exist, under certain circumstances, between arbitration and the CLRA's injunctive relief provision (Civ.Code, § 1780, subd. (a)(2)). Specifically, the court held that where a CLRA plaintiff functions as a private attorney general, seeking to enjoin future deceptive practices on behalf of the general public, "arbitration is not a suitable forum, and the Legislature did not intend this type of *398 injunctive relief to be arbitrated." (Broughton, supra, 21 Cal.4th at pp. 1079-1080, 90 Cal.Rptr.2d 334, 988 P.2d 67.) Furthermore, Congress did not contemplate FAA enforcement of public injunction arbitration. (Id. at pp. 1083-1084, 90 Cal.Rptr.2d 334, 988 P.2d 67.) Two factors, taken together, convinced the Broughton court of the inherent conflict between arbitration and the underlying purpose of the CLRA's injunctive relief remedy: First, the relief is for the benefit of the general public rather than the party bringing the action, and second, the judicial forum has significant institutional advantages over arbitration in administering a public injunctive remedy. (21 Cal.4th at p. 1082, 90 Cal.Rptr.2d 334, 988 P.2d 67.)
The Broughton rationale has since been extended to claims for injunctive relief brought under Business and Professions Code section 17200 (Groom v. Health Net (2000) 82 Cal.App.4th 1189, 1199, 98 Cal. Rptr.2d 836 (hereafter Groom), Coast Plaza Doctors Hospital v. Blue Cross of California (2000) 83 Cal.App.4th 677, 691-692, 99 Cal.Rptr.2d 809 (hereafter Coast Plaza ), Warren-Guthrie v. Health Net (2000) 84 Cal.App.4th 804, 817, 101 Cal.Rptr.2d 260 (hereafter Warren-Guthrie)), and PacifiCare does not dispute that it extends to section 17500 injunctive claims as well.
In this case, the trial court ruled that all Cruz's claims for injunctive relief were inarbitrable under Broughton and Coast Plaza. On appeal, PacifiCare contends that Broughton has been abrogated by the recent United States Supreme Court opinion in Green Tree Financial Corp.-Ala. v. Randolph (2000) 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (hereafter Randolph ). In that case, the court held that an arbitration agreement's silence with respect to payment of arbitration expenses, challenged under the Truth in Lending Act (15 U.S.C. § 1601) and the Equal Credit Opportunity Act (15 U.S.C. §§ 1691-1691f), did not render it unenforceable, because the plaintiff had not met her burden of establishing the likelihood that prohibitive arbitration costs would undermine her ability to vindicate her statutory rights. Thus, the Randolph court considered and resolved an issue entirely different from the one raised here and in Broughton. But PacifiCare focuses on the Randolph court's general statement, "In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. [Citations.]" (Randolph supra, 531 U.S. at p. 90, 121 S.Ct. 513, italics added; see also id., at pp. 90-91, 121 S.Ct. at p. 522.)
As indicated by the Randolph court's citation to Gilmer v. Interstate/Johnson Lane Corp. (1991) 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (hereafter Gilmer), and Mitsubishi supra, 473 U.S. at page 628, 105 S.Ct. 3346 (and as PacifiCare expressly acknowledges), the quoted language does not constitute a new rule of law, but rather reiterates the established rule from which the Broughton court began its analysis. (See, e.g., Broughton, supra, 21 Cal.4th at pp. 1075, 1083, 90 Cal.Rptr.2d 334, 988 P.2d 67, citing Gilmer, Mitsubishi and the "Congressional intent" rule.) The high court, once again considering federal statutory claims, did nothing in Randolph to abrogate either its own "inherent conflict" method for determining Congressional intent, nor the Broughton court's application of that rationale to state statutory claims. (Cf. Nordlinger v. Lynch (1990) 225 Cal.App.3d 1259, 1264-1265, 1274-1275, 275 Cal.Rptr. 684 [California courts bound by state Supreme Court's rejection of federal constitutional challenges to state law absent *399 subsequent United States Supreme Court decision "directly on point"].)[3]
The trial court properly determined that Cruz's claims for public injunctive relief are inarbitrable under Broughton.

B. Arbitrability of Equitable Monetary Relief.
In addition to injunctive relief, Cruz requested disgorgement (Bus. & Prof.Code, §§ 17203, 17535), restitution (Civ.Code, § 1780, subd. (a)(3)), and disgorgement, restitution, refund, or reimbursement, as a remedy for alleged unjust enrichment.[4] While "statutory damages claims are fully arbitrable" (Broughton, supra, 21 Cal.4th at p. 1084, 90 Cal. Rptr.2d 334, 988 P.2d 67), the trial court found Cruz's claims for equitable monetary relief were not.
The CLRA expressly distinguishes between damages and restitution. (Civ. Code, § 1780, subds.(a)Q) & (3).) By their terms, Business and Professions Code sections 17203 and 17535 provide for restoration of money acquired by unfair competition and/or false advertising, but damages are not available under either section. (Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706). What is properly sought in a claim labeled "unjust enrichment" is restitution. (Lauriedale Associates, Ltd. v. Wilson (1992) 7 Cal. App.4th 1439, 1448, 9 Cal.Rptr.2d 774.) The trial court found the distinction between damages and restitution determinative, but PacifiCare maintains that under Broughton and its progeny, all claims except those for public interest injunctive relief are arbitrable, that is, only requests for public injunctions are exempt from arbitration. PacifiCare reads too much into the Broughton line of cases.
The Broughton plaintiffs sought medical malpractice damages and, under the CLRA, both damages and an injunction. (Broughton, supra, 21 Cal.4th at p. 1072, 90 Cal.Rptr.2d 334, 988 P.2d 67.) The court held that "the injunctive relief portion of a CLRA claim is inarbitrable, . . . [but] an action for damages under the CLRA is fully arbitrable. . . ." (Broughton, supra, 21 Cal.4th at p. 1072, 90 Cal. Rptr.2d 334, 988 P.2d 67; see also p. 1084, distinguishing injunctive relief from statutory damages). When it concluded that "the injunctive relief action alone should be decided in a judicial forum" (id. at p. 1088, 90 Cal.Rptr.2d 334, 988 P.2d 67, italics *400 added), the Broughton court did not have before it a claim for restitution.[5]
Similarly, in the cases following Broughton, the courts did not squarely address or resolve the issue of the arbitrability of equitable monetary relief. In Groom, supra, the plaintiff alleged several causes of action sounding in contract and/or tort, "and (9) injunctive and equitable relief on behalf of the general public pursuant to Business and Professions Code section 17200 to enjoin unlawful business practices in the future." (82 Cal.App.4th at p. 1193, 98 Cal.Rptr.2d 836.) The court reversed the trial court's ruling that defendant Health Net had waived its right to compel arbitration, but held that Broughton's reasoning applied to "Groom's cause of action on behalf of the general public to enjoin Health Net's allegedly unfair business practices pursuant to Business and Professions Code section 17200." (Id. at p. 1199, 98 Cal.Rptr.2d 836.) "Groom's claims for injunctive relief on behalf of the general public pursuant to Business and Professions Code section 17200 must therefore be severed from disposition of the arbitrable claims." (Ibid.) To the extent the court's reference to a cause of action for "injunctive and equitable relief (italics added) might suggest that Groom had requested some unspecified non injunctive equitable relief, e.g., restitution and/or disgorgement, which the court impliedly relegated to arbitration, that inference is undermined by the factual basis of her complaint: "[A]s a result of Health Net's refusal or failure to timely provide a neurological examination, a prescription drug, and an MR angiogram and cardiac workup, Groom suffered a disabling stroke." (Id at p. 1191, 98 Cal.Rptr.2d 836) This allegation supports a simple damages claim, and contrary to PacifiCare's suggestion, there is no indication the Groom court considered or decided the arbitrability of equitable monetary relief.
In Coast Plaza, supra, plaintiff hospital alleged violations of Business and Professions Code sections 17020 et sequitur (unfair trade practices) and 17200 (unfair competition) in addition to three nonstatutory causes of action (83 Cal.App.4th at pp. 681, 691, 99 Cal.Rptr.2d 809), seeking "both compensatory and punitive damages as well as injunctive relief." (Id at p. 682, 99 Cal.Rptr.2d 809; see also p. 692, 99 Cal.Rptr.2d 809, quoting prayer for monetary damages and, to remedy statutory violations, an injunction.) The court held, "Coast Plaza's requests for injunctive relief for the benefit of the public at large as a remedy under the two statutory schemes are the only requests for relief that are inarbitrable. Applying Broughton here, Coast Plaza must arbitrate the remainder of its causes of action and noninjunctive *401 remedies, including its purported entitlement to monetary damages. [Citations.]" (Id. at p. 692, 99 Cal.Rptr.2d 809, italics in original; see also p. 693, 99 Cal.Rptr.2d 809 ["all (Coast Plaza's) claims, save those seeking public injunctive relief, must be severed and resolved in arbitration"].) The court noted that under the Unfair Competition Act (Bus. & Prof.Code, § 17200 et seq.), a private litigant is entitled to "disgorgement of profits made by the defendant through unfair or deceptive practices in violation of the statutory scheme or restitution to victims of the unfair competition" (Coast Plaza, supra, 83 Cal.App.4th at pp. 691-692, 99 Cal. Rptr.2d 809, citations omitted), but since there is no indication that Coast Plaza in fact sought disgorgement or restitution, the case does not stand for the proposition that entitlement to such equitable monetary remedies must be arbitrated.
Finally, in Warren-Guthrie, supra, the plaintiff alleged four causes of action which would support recovery of damages, and a fifth for "injunctive relief under Business and Professions Code section 17200. (84 Cal.App.4th at pp. 808, 817, 101 Cal. Rptr.2d 260.) Citing Broughton and Groom, the court reversed the trial court's denial of a motion to compel arbitration, "with the exception of the cause of action for public injunctive relief, which shall be severed from the arbitrable claims and adjudicated in a judicial forum." (Id. at pp. 817-818,101 Cal.Rptr.2d 260.)
In the absence of authority directly on point, Cruz asserts the trial court properly viewed his claims for restitution and/or disgorgement as "purely equitable remedies ancillary to injunctive relief," and therefore inarbitrable. We agree.
The complaint in this case alleges not a personal injury, but a public wrong. Under Broughton's rationale, the remedy for such a public wrong may not be adjudicated by a private arbitrator. Put another way, there is an inherent conflict between arbitration and the public protection purposes of Business and Professions Code sections 17200 and 17500, as well as the restitution provision of the CLRA.
Describing the inherent conflict justifying an arbitration exemption for public injunctions, the Broughton court explained that "the purpose of arbitration is to voluntarily resolve private disputes in an expeditious and efficient manner. [Citations.]" (21 Cal.4th at p. 1080, 90 Cal. Rptr.2d 334, 988 P.2d 67.) "On the other hand, the evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute but to remedy a public wrong." (Ibid.) "In other words, the plaintiff in a CLRA . . . action is playing the role of a bona fide private attorney general. [Citations.]" (Ibid.) In People v. Pacific Land Research Co. (1977) 20 Cal.3d 10, 141 Cal.Rptr. 20, 569 P.2d 125 (hereafter Pacific Land Research), the Attorney General and a county district attorney alleged that various statutory violations committed in the course of a sale of land to the public constituted unfair competition, and sought not only injunctive relief and civil penalties, but also restitution on behalf of the vendees under Business and Professions Code section 17535. (Id. at p. 14, 141 Cal.Rptr. 20, 569 P.2d 125.) The court stated, "The request for restitution on behalf of vendees in such an action is only ancillary to the primary remedies sought for the benefit of the public. [Citation.] While restitution would benefit the vendees by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions." (Id. at p. 17, *402 141 Cal.Rptr. 20, 569 P.2d 125.)[6] In Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 153 Cal.Rptr. 28, 591 P.2d 51, a class action suit, the court explained that Business and Professions Code section 17535 authorizes restitution "in order to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its illgotten gains." (Id. at p. 449, 153 Cal.Rptr. 28, 591 P.2d 51.) "Restitution is not intended to benefit the tendees by the return of the money, but instead is designed to penalize a defendant for past unlawful conduct and thereby deter future violations." (People v. Toomey, supra, 157 Cal. App.3d at pp. 25-26, 203 Cal.Rptr. 642, construing Bus. & Prof.Code, §§ 17203 & 17535.)
The equitable monetary relief requested here is intimately tied to the inarbitrable injunctive relief. There can be no restitution or disgorgement without a finding of injury to the public, and it is hard to imagine a restitution award or a disgorgement order without an underlying injunction against further commission of that public wrong. "As one court has stated, `The injunction against future violations, while of some deterrent force, is only a partial remedy since it does not correct the consequences of past conduct. To permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. On requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.' [Citations.]" (Fletcher v. Security Pacific National Bank, supra, 23 Cal.3d at p. 451, 153 Cal.Rptr. 28, 591 P.2d 51, brackets in original.)[7]

CONCLUSION AND DISPOSITION
Our holding in this case is a narrow one: Where, as here, a restitution claim is ancillary to injunctive relief sought under a statutory scheme whose primary purpose is to protect the public by punishing wrongdoing and deterring future violations, rather than to compensate individual plaintiffs, the restitution claim is not subject to arbitration, but must be tried along with the claim for injunctive relief in a court of law. Since the trial court properly ruled that all Cruz's claims are inarbitrable, we need not reach PacifiCare's request for a stay pending arbitration, or any of the alternative "independent grounds" Cruz advances for affirmance. *403 Accordingly, the parties' motions for judicial notice of documents relating to the issue of unconscionability are denied as moot. The order denying PacifiCare's motion to compel arbitration is affirmed, and the matter remanded for further proceedings in accordance with this opinion.
HAERLE, J., and LAMBDEN, J., concur.
NOTES
[1] Paragraph 15.02 of the agreement states in pertinent part, "PacifiCare uses binding arbitration to resolve any and all disputes between PacifiCare and group or member, including but not limited to, allegations . . . of medical malpractice . . . and other disputes relating to the delivery of services under the PacifiCare Health Plan."
[2] The FAA provides, "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)
[3] The recent Supreme Court decision in Circuit City Stores, Inc. v. Adams (2001) 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 [9 U.S.C. § 1 exempts from arbitration employment contracts of transportation workers only]) is equally inapt. PacifiCare directs our attention to a passage (id. at p. 1313) in which the court reiterates its general teaching that both state and federal statutes are governed by the FAA's mandate, but the case did not present, nor did the court address, the "inherent conflict" exception to section two of the FAA, which is at issue in this case.
[4] To remedy the alleged statutory violations, Cruz requested an order that defendants "disgorge to plaintiff and the class, all of their illgotten gains and monies wrongfully acquired by means of" unfair competition and/or unlawful advertising, and "make restitution to plaintiff and the class of all money paid to defendants during the class period." To remedy the alleged unjust enrichment, he asked for (1) "restitution, refund, or reimbursement of the monies paid by or on behalf of plaintiff and the class to defendants so as to restore any and all monies to plaintiff and members of the class which were acquired and obtained by means of" unfair advertising and/or business practices, "and which ill-gotten gains are still retained by defendants," and (2) "disgorgement of the excessive and illgotten monies obtained by defendants as a result of" those acts and practices.
[5] Two justices concurred with that part of the majority opinion which held that as much of the second count of the plaintiffs' complaint as sought actual and punitive damages was arbitrable. But the opinion was phrased that an agreement to arbitrate a claim under the CLRA "is enforceable to the extent [it] seeks actual damages, restitution, or punitive damages." (Cone, and dis. opn. of Chin, J., at p. 1088, 90 Cal.Rptr.2d 334, 988 P.2d 67, italics added.) We could ignore the reference to "restitution" on the ground that we are not bound by a minority's characterization of a majority's holding (see Roy Supply, Inc. v. Wells Fargo Bank (1995) 39 Cal.App.4th 1051, 1067, 46 Cal.Rptr.2d 309), but we prefer to note that the majority opinion in Broughton did not, in fact, discuss or mention any claim for restitution under the CLRA (specifically and separately provided for, as noted above, in § 1780, subd. (a)(3)). Indeed, apparently no such claim was ever brought by the plaintiffs in that case. (See maj. opn. at p. 1072, 90 Cal.Rptr.2d 334, 988 P.2d 67, describing the claims brought by the plaintiffs.) Therefore, we feel free to disregard the concurring opinion's mention of "restitution" on the ground that it referred to an issue not in fact before the court.
[6] By "private class action," the Pacific Land Research court was apparently referring to suits for damages brought under the CLRA. It expressly referred to Civil Code section 1781, and described such suits as being "aimed at recovery of money" and "usually based upon the theories of fraud or breach of contract," adding, "Reliance and actual damages must be shown." (20 Cal.3d at p. 18 & fn. 7, 141 Cal.Rptr. 20, 569 P.2d 125.) By contrast, "Since the unlawful business practices act seeks to protect the public from continued violations rather than [to] benefit private litigants [citations], reliance and actual damages are not necessary elements to an award under [Business & Professions Code] sections 17203 and 17535. [Citations.]" (People v. Toomey (1984) 157 Cal.App.3d 1, 25, 203 Cal.Rptr. 642.) Although the Pacific Land Research court did not consider section 17535 actions, such as this one, brought by private parties, its observations on the nature of the statute's restitution provision are nonetheless illuminating.
[7] The issue of individual claim for disgorgement/frestitution, which was briefly discussed at oral argument, is not now before us. This opinion assumes, as do the parties, that this action will be maintained as a class action. However, there has yet been no motion for class certification. Denial of such a motion might well render any monetary claim arbitrable, but that question is also not now before us.