174 Cal.App.4th 82 (2009)
___ Cal.Rptr.3d ___
JAMES A. CLARK et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NATIONAL WESTERN LIFE INSURANCE COMPANY, Real Party in Interest.
No. B212512.
Court of Appeals of California, Second District, Division Seven.
May 21, 2009.
As modified May 21, 2009.
*87 Gianelli & Morris, Robert S. Gianelli; Ernst & Mattison and Raymond E. Mattison for Petitioners.
No appearance for Respondent.
Barger & Wolen, Kent R. Keller and Larry M. Golub for Real Party in Interest.
Reed Smith, Margaret M. Grignon, Robert D. Phillips, Jr., James C. Martin and Wendy S. Albers for Association of California Life and Health Insurance Companies, North American Company for Life and Health Insurance and Midland National Life Insurance Company as Amici Curiae on behalf of Real Party in Interest.

OPINION
PERLUSS, P. J.
Civil Code section 3345 (section 3345) authorizes the award of an enhanced remedyup to three times greater than the amount of a fine, civil penalty "or any other remedy the purpose or effect of which is to punish or deter" that would otherwise be awardedin actions by or on behalf of senior citizens or disabled persons seeking to "redress unfair or deceptive acts or practices or unfair methods of competition." Is this enhanced remedy available in a private action by senior citizens seeking restitution under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.)?
The unambiguous language of section 3345 encompasses actions under the unfair competition law brought by or on behalf of senior citizens, even those initiated by private plaintiffs seeking only restitution. Although section 3345 is limited to actions involving remedies intended to "punish or deter," deterrence of illegal acts is both an important aim and a recognized effect of a restitution remedy under the unfair competition law. (See, e.g., Korea Supply *88 Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1148 [131 Cal.Rptr.2d 29, 63 P.3d 937] (Korea Supply); Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].)
Nonetheless, as both real party in interest and the amici curiae forcefully argue, because the enhanced remedy authorized by section 3345 is similar in many respects to an award of punitive damages, permitting a treble restitution recovery appears to contradict the well-established rule that private plaintiffs in actions under the unfair competition law "may not receive damages, much less treble damages . . . ." (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 179 [83 Cal.Rptr.2d 548, 973 P.2d 527] (Cel-Tech).) The legislative history of section 3345 is unhelpful on this point, neither indicating a clear intent to modify this accepted principle of unfair competition jurisprudence nor reflecting an understanding that the sweeping language in section 4 of Senate Bill No. 1157 (1987-1988 Reg. Sess.), which enacted section 3345, was to be given a restrictive interpretation. Accordingly, we are left with the language of section 3345 itself, which on its face applies to senior citizens or disabled persons seeking restitution under the unfair competition law.
Because the trial court concluded section 3345 is inapplicable to private actions seeking restitution under the unfair competition law, we grant the petition for writ of mandate filed by James A. Clark, Orville R. Camien, Mary F. Simms-Schmidt and Carmen R. Armstrong on behalf of themselves and as representatives of a certified class of certain senior citizens and direct respondent Los Angeles Superior Court to vacate its order of November 14, 2008 granting National Western Life Insurance Company's (National Western) motion for judgment on the pleadings and enter a new and different order denying that motion.

FACTUAL AND PROCEDURAL BACKGROUND

1. The Certified Class Action

This action, originally filed in September 2004 by Clark, a senior citizen, alleges National Western utilized deceptive business practices to induce the purchase of high-commission annuity contracts with large surrender penalties in violation of, among other things, the unfair competition law. In December 2005 a third amended complaint was filed naming the petitioners as plaintiffs and including class action allegations. The third amended complaint alleged violations of the unfair competition law, breach of contract, breach of the covenant of good faith and fair dealing and fraud and sought, in part, restitution of the improper surrender penalties and enhanced remedies for each cause of action under section 3345.
*89 In February 2007 the trial court granted, in part, petitioners' motion for class certification, certifying a class consisting of "[a]ll California residents who purchased National Western Life Insurance Company deferred annuities when they were age 65 or older" under specified certificate forms. However, the court permitted the class to proceed only on the unfair competition claim.[1] The court also certified a subclass of approximately 36 class individuals who purchased annuities sold by Ezra Chapman and ruled the subclass could proceed against Chapman and National Western on both the fraud claim and the unfair competition claim.[2]

2. National Western's Motions for Judgment on the Pleadings and Summary Adjudication

On July 15, 2008 National Western filed a motion for judgment on the pleadings, asserting section 3345's enhanced, "treble damages" remedy was inapplicable to a private action under the unfair competition law. On the same date, National Western filed a motion for summary adjudication presenting the identical argument. In addition, the summary adjudication motion argued punitive damages were not available for the subclass's fraud claim because plaintiffs could not establish that National Western had ratified Chapman's conduct or had engaged in any behavior warranting the imposition of punitive damages.
On November 14, 2008 the court granted National Western's motion for judgment on the pleadings without leave to amend, concluding section 3345 is inapplicable to a private action seeking restitution under the unfair competition law because "restitution, the only available remedy, does not have the purpose or effect of punishment or deterrence." The court denied National Western's motion for summary adjudication, finding triable issues of material fact existed as to whether the subclass's common law fraud claim warranted punitive damages.

3. The Instant Petition

On December 5, 2008 plaintiffs petitioned this court for a writ of mandate compelling the trial court to vacate its order granting the motion for judgment *90 on the pleadings and to enter a new order denying the motion. After requesting and receiving an informal opposition to the petition, on December 30, 2008 this court issued an order to show cause as to why the relief requested in the petition should not be granted. On January 23, 2009 National Western filed its return, and on February 13, 2009 plaintiffs filed their reply.

DISCUSSION

1. Standard of Review

We review de novo the trial court's order granting a motion for judgment on the pleadings (Gerawan Farming, Inc. v. Lyons (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720]), assuming the truth of, and liberally construing, all properly pleaded factual allegations in the complaint. (Id. at pp. 515-516; see Kapsimallis v. Allstate Ins. Co. (2002) 104 Cal.App.4th 667, 672 [128 Cal.Rptr.2d 358] ["[a]ll properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . ."].) On appeal we properly consider evidence outside the pleadings presented to the trial court without objection (Stone Street Capital, LLC v. California State Lottery Com. (2008) 165 Cal.App.4th 109, 115 [80 Cal.Rptr.3d 326]; O'Neil v. General Security Corp. (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712]), as well as matters subject to judicial notice. (Stone Street Capital, at p. 115; Kapsimallis, at p. 672 ["judicially noticeable matters may be considered"].)

2. Overview of the 1988 Consumer Protection Legislation Providing Additional Penalties and Enhanced Remedies for Unfair or Deceptive Practices Perpetrated Against Senior Citizens or Disabled Persons

(1) Since 1977 the unfair competition law has prohibited unlawful, unfair or fraudulent business practices or unfair, deceptive, untrue or misleading advertising (Bus. & Prof. Code, § 17200) and subjected violators in actions prosecuted by public prosecutors to civil penalties not exceeding $2,500 for each violation (Bus. & Prof. Code, § 17206), as well as to injunctions and restitution orders (Bus. & Prof. Code, § 17203). Private plaintiffs may also prosecute actions under the unfair competition law, but their remedies are limited to orders for injunctions and restitution. (Bus. & Prof. Code, § 17203.) Damages and penalties, whether compensatory or punitive, are prohibited. (Korea Supply, supra, 29 Cal.4th at p. 1148 [only monetary relief available to private plaintiffs under unfair competition law is restitution; compensatory and punitive damages are not authorized]; Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 950 [119 Cal.Rptr.2d 296, 45 P.3d 243] ["[i]n a suit under [unfair competition law], a public prosecutor may collect civil penalties, but a private plaintiff's remedies are `generally limited to injunctive *91 relief and restitution'"]; Cel-Tech, supra, 20 Cal.4th at p. 179 [under unfair competition law "[p]laintiffs may not receive damages, much less treble damages, or attorney fees"].)
In 1987, citing statistics from the California Department of Justice and the International Association of Chiefs of Police indicating senior citizens were "the most frequent victims" of consumer fraud and deceptive business practices, often with tragic consequences, the state Department of Consumer Affairs urged the Legislature to strengthen the consumer protection laws to protect senior citizens from consumer fraud.[3] Senate Bill No. 1157 (1987-1988 Reg. Sess.), passed by the Legislature in September 1988 and signed by the Governor and enacted into law later that month (see Stats. 1988, ch. 823, §§ 1-4, pp. 2665-2669), was the culmination of that effort.

a. The evolution of Senate Bill No. 1157

As originally sponsored by the Department of Consumer Affairs and introduced by Senator Ed Davis on March 5, 1987, Senate Bill No. 1157 (1987-1988 Reg. Sess.) simply added a new section 17206.1 to the Business and Professions Code, providing civil penalties for violation of Business and Professions Code section 17200 would be not less than $2,500 or more than $5,000 for each violation if the victim of the violation is 65 years old or older.[4] The enhanced civil penalty was to be collected in an enforcement action initiated by the Attorney General or a designated local prosecutor pursuant to Business and Professions Code section 17206.
The Attorney General opposed the legislation. In an April 9, 1987 letter to Senator Davis, Attorney General Van de Kamp explained existing law, which under Business and Professions Code section 17206 provided for a civil penalty up to $2,500 per violation of the unfair competition law, gave the courts broad discretion to tailor civil penalties to the specific features of each *92 case and cautioned the mandatory penalty scheme envisioned by Senate Bill No. 1157 "would create administrative nightmares at best, and may well be unconstitutional." (Atty. Gen., letter to Sen. Ed Davis re Sen. Bill No. 1157 (1987-1988 Reg. Sess.) Apr. 9, 1987.)
Amendments to Senate Bill No. 1157 (1987-1988 Reg. Sess.) in May 1987 eliminated the mandatory minimum civil penalty of $2,500 for each violation of Business and Professions Code section 17200, specifying instead a civil penalty of not more than $5,000 for each violation. The Attorney General's office acknowledged the amendments eliminated the major problems it had identified in the original bill but still opposed it because "the bill accomplishes no demonstrable purpose and creates ambiguities, constitutional questions, difficult law enforcement problems and uncertainties where none now exist." (Sr. Asst. Atty. Gen. Herschel T. Elkins, mem. to Asst. Atty. Gen. Jeff Fuller re Sen. Bill No. 1157 (1987-1988 Reg. Sess.) May 12, 1987, p. 3.) In a May 12, 1987 analysis of the legislation provided to the Department of Consumer Affairs, Senior Assistant Attorney General Herschel T. Elkins observed, "Of course, the author is seeking greater protection for senior citizens. Perhaps greater personal remedies in the actions brought by those consumers might be helpful. Of greatest help, of course, would be additional personnel to allow agencies to bring actions in areas in which victims are more likely to be senior citizens." (Ibid.)
The staff of the Department of Consumer Affairs attempted to resolve some of the Attorney General's concerns about the enforcement of proposed new Business and Professions Code section 17206.1 with additional amendments. It also sought to implement the suggestion of creating greater personal remedies for senior citizens by proposing in the same bill new language in the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA)[5] authorizing the recovery of three times actual damages, as well as reasonable attorney fees, when the victim of a violation of the CLRA is a senior citizen. The Attorney General's office responded to this series of proposals by preparing draft language for a new section 3284 of the Civil Code, which would have authorized the court, when it was otherwise "authorized by statute to impose a fine, penalty or any other remedy for the purpose of punishment or deterrence," to consider in setting the amount to impose various factors relating to the impact of the defendant's conduct on senior citizens. (See Dept. Consumer Affairs, letter to Sr. Asst. Atty. Gen. Herschel T. Elkins, June 19, 1987.)
*93 Following further refinements to these draft proposals by the Department of Consumer Affairs and Senator Davis's staff, Senate Bill No. 1157 (1987-1988 Reg. Sess.) was amended on July 9, 1987 to provide for (1) addition of section 17206.1 to the Business and Professions Code, authorizing imposition of a civil penalty not to exceed $2,500 in addition to the civil penalty that may be assessed and recovered in a civil action under Business and Professions Code section 17206; (2) amendment of Civil Code section 1780 to permit recovery by senior citizens of three times actual damages in private actions under the CLRA; and (3) addition of section 3345[6] authorizing the trier of fact, whenever it finds one or more of the factors listed in subdivision (b) of the new section relating to the effect of the defendant's conduct on senior citizens, to impose a fine, penalty or other remedy that is greater than it would impose in the absence of that factor.
The scheduled hearing on Senate Bill No. 1157 (1987-1988 Reg. Sess.) as amended July 9, 1987, was cancelled at the request of Senator Davis. No further action was taken on the bill until April 12, 1988 when it was re-referred to committee following additional amendments by Senator Davis. These April 1988 amendments extended the bill's coverage to "disabled persons," as well as to "senior citizens," and narrowed the focus from senior citizens and disabled persons generally to those who are more vulnerable to harm than the average consumer, have been specifically targeted as the victims of consumer fraud or have suffered significant harm that relates to their status as senior citizens or disabled persons. The proposed CLRA amendments eliminated the trebling of actual damages in senior citizen cases and provided instead, in addition to other remedies that may otherwise be available, an award of up to $5,000 when the trier of fact finds the senior citizen or disabled person suffered substantial physical, emotional or economic damage from the defendant's conduct and makes an affirmative finding in regard to one or more of the enumerated factors involving senior citizens or disabled persons as victims of consumer fraud now set forth in the bill's proposed section 3345. (See Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended Apr. 12, 1988, §§ 1-3.)[7]
The reach of proposed section 3345 was expressly limited by the April 1988 amendments, so that it no longer applied in any action brought by or on behalf of senior citizens or disabled persons, but only in actions "to redress unfair or deceptive acts or practices or unfair methods of competition." (See Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended Apr. 12, 1988, § 4.) *94 In addition to simply considering the factors relating to the impact of the defendant's conduct on senior citizens and disabled persons in fixing the amount of an otherwise authorized fine, penalty or other remedy for the purpose of punishment or deterrence, however, as amended proposed section 3345 permitted the trier of fact to impose additional amounts up to three times the remedy otherwise available. Moreover, just as the enhanced CLRA remedy cross-referenced the factors identified in the enhanced remedy specified in proposed section 3345, the amended section 3345 adopted the definitions of "senior citizen" and "disabled person" that would be included in the CLRA. (See Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended Apr. 12, 1988, § 4.)
After some final, technical amendments to conform the legislation to another bill passed in the same session, Senate Bill No. 1157 (1987-1988 Reg. Sess.) as amended June 13, 1988, was passed by the Legislature in August 1988 and signed by the Governor on September 12, 1988. (See Stats. 1988, ch. 823, §§ 1-4, pp. 2665-2669.)

b. The final version of the 1988 senior citizen and disabled person legislation

(2) As the review of the development and final adoption of Senate Bill No. 1157 (1987-1988 Reg. Sess.) makes plain, the legislation was the product of the Department of Consumer Affairs's effort to strengthen the role of the Attorney General and other public prosecutors in protecting senior citizens and disabled persons from unfair business practices and the fully complementary, but nonetheless distinct, preference of the Attorney General's office to create greater private remedies for senior citizens who have been targeted as victims of consumer fraud. As finally enacted the legislation effected three major changes to California's consumer protection laws relating to senior citizens and disabled persons. First, it amended the unfair competition law by adding Business and Professions Code section 17206.1,[8] which authorizes the Attorney General and prosecutors in civil enforcement *95 proceedings to recover an added civil penalty up to $2,500 (in addition to the $2,500 civil penalty available under Bus. & Prof. Code, § 17206) when the unfair practice is perpetrated against a senior citizen or disabled person. (See Bus. & Prof. Code, § 17206.1; Stats. 1988, ch. 823, § 1, pp. 2665-2666.)[9]
Second, it amended the CLRA to authorize private litigants to recover, in addition to other remedies available under the act, including compensatory and punitive damages, an additional monetary awardup to $5,000when the unfair practice prohibited by the act is perpetrated against a senior citizen or disabled person. (Civ. Code, § 1780, subd. (b)(1)(A)-(C); Stats. 1988, ch. 823, § 3, pp. 2667-2668.)
Third, it added section 3345 to the Civil Code, authorizing an enhanced remedy in actions brought by or on behalf of senior citizens seeking redress for "unfair or deceptive acts or practices or unfair methods of competition." (§ 3345, subd. (a).) Section 3345, subdivision (a), limits the new provision to actions "brought by, on behalf of, or for the benefit of senior citizens or disabled persons, as those terms are defined in subdivisions (f) and (g) of [Civil Code] Section 1761,[10] to redress unfair or deceptive acts or practices or unfair methods of competition." Section 3345, subdivision (b), provides the enhanced remedy: "Whenever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion, the trier of fact shall consider all of the following factors,[11] in addition to other *96 appropriate factors, in determining the amount of fine, civil penalty or other penalty, or other remedy to impose. Whenever the trier of fact makes an affirmative finding in regard to one or more of the following factors, it may impose a fine, civil penalty or other penalty, or other remedy in an amount up to three times greater than authorized by the statute, or, where the statute does not authorize a specific amount, up to three times greater than the amount the trier of fact would impose in the absence of that affirmative finding."

3. Section 3345 May Be Used to Enhance a Restitution Award

The trial court granted National Western's motion for judgment on the pleadings because, in its view, restitution, the only monetary relief available to private litigants under the unfair competition law, does not have the purpose or effect of punishment or deterrence, a prerequisite to application of section 3345's enhanced, treble recovery. Echoing that conclusion, National Western asserts restitution under the unfair competition law is intended to restore money or property acquired by the defendant, not to deter unlawful conduct. That interpretation of the nature of a restitution remedy, potentially applicable not only in private actions under the unfair competition law but also in lawsuits alleging violation of a variety of other consumer protection statutes, is unduly cramped.[12]
(3) In determining whether section 3345 applies when an action has been brought by senior citizens seeking restitution for fraud or deceptive business practices, we are, of course, guided by well-established principles of statutory construction. Our fundamental task is to ascertain the Legislature's intent and thereby effectuate the purpose of the statute. (Olson v. Automobile Club of Southern California (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882]; Smith v. Superior Court (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].) "`We begin with the statutory language because it is generally the most reliable indication of legislative intent.'" (Miklosy v. Regents of University of California (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629].) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (Day v. City of Fontana (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196]; see also Smith, at p. 83.) "If, however, the statutory terms *97 are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we `"select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences."'" (Day, at p. 272.) "We do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (People v. Pieters (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420]; see also Stone Street Capital, LLC v. California State Lottery Com., supra, 165 Cal.App.4th at p. 118 ["[w]e presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules"].)
(4) Under the plain language of section 3345 two prerequisites must be satisfied before its enhanced remedy may apply: (1) The action must be brought by or on behalf of senior citizens or disabled persons seeking redress for "unfair or deceptive acts or practices or unfair methods of competition"plainly satisfied here; and (2) the action must be one in which the trier of fact is authorized by a statute to impose a fine, civil penalty or any other penalty the purpose or effect of which is to punish or deter.

a. Deterrence of anticompetitive or deceptive business practices is a purpose or effect of the unfair competition law's restitution remedy

(5) Contrary to the trial court's conclusion, California courts have long recognized that restitution awarded under the unfair competition law has a deterrent purpose and effect. (See Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1267 [purpose of restitution order under Bus. & Prof. Code, § 17203 is "`to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains'"]; Korea Supply, supra, 29 Cal.4th at p. 1148 ["deterrence of unfair practices" is "important goal" of unfair competition law, though not sole objective]; Fletcher v. Security Pacific National Bank (1979) 23 Cal.3d 442, 450 [153 Cal.Rptr. 28, 591 P.2d 51] [unfair competition law vests trial court with "broad authority" to fashion remedies that effectively "`prevent'" unfair trade practices and "deter the defendant, and similar entities, from engaging in such practices in the future"]; Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 695 [38 Cal.Rptr.3d 36] ["[u]nder the false advertising and unfair competition laws, the remedy of restitution serves two purposesreturning to the plaintiff monies in which he or she has an interest and deterring the offender from future violations"]; cf. People ex rel. Kennedy v. Beaumont Investment, Ltd. (2003) 111 Cal.App.4th 102, 135 [3 Cal.Rptr.3d 429] *98 ["statutory restitution [under unfair competition law] is not solely `intended to benefit the [victims] by the return of money, but instead is designed to penalize a defendant for past unlawful conduct and thereby deter future violations'"].) The deterrent effect of a restitution remedy under the unfair competition law was most recently articulated in In re Tobacco II Cases (2009) 46 Cal.4th 298, in which the Supreme Court noted in the context of interpreting Proposition 64's impact on class actions that its holdings in prior nonrestitutionary disgorgement cases "did not overrule any part of Fletcher v. Security Pacific National Bank, supra, 23 Cal.3d 442, under which restitution may be ordered `without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice.'" (In re Tobacco II Cases, at pp. 320-321, fn. 14.)[13]
Although acknowledging that deterrence may be an effect of a restitution remedy, National Western emphasizes "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest" (Korea Supply, supra, 29 Cal.4th at p. 1149) and argues applying section 3345 in a private action seeking restitution under the unfair competition law would transform the remedy and, in effect, allow an award of damages under the guise of restitution, something the Supreme Court has specifically held is prohibited. (See, e.g., Korea Supply, at p. 1148 [disgorgement of profits in which plaintiff has no ownership interest is not permitted under the unfair competition law even though it would have a deterrent effect; a "court cannot, under the equitable powers of [Bus. & Prof. Code, §] 17203, award whatever form of monetary relief it believes might deter unfair practices"]; see also Day v. AT&T Corp. (1998) 63 Cal.App.4th 325, 339 [74 Cal.Rptr.2d 55] [The intent of Bus. & Prof. Code, § 17203's restitution remedy "is to make whole, equitably, the victim of an unfair practice. While it may be that an order of restitution will also serve to deter future improper conduct, in the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect. Nor is the section intended as a punitive provision, though it may fortuitously have that sting when properly applied to restore a victim to wholeness."].)
*99 (6) National Western's argument misapprehends Korea Supply, supra, 29 Cal.4th 1134, as well as Cel-Tech, supra, 20 Cal.4th 163. Both cases hold the court's equitable powers to fashion a remedy under the unfair competition law, while broad, are not unlimited and cannot serve as justification for awarding the plaintiff damages, even when such an award is consistent with the unfair competition law's purpose of deterrence. Neither case suggests enhanced remedies may not be available to private litigants under a different, express legislative mandate authorizing them.
(7) Unlike Korea Supply and Cel-Tech, in this case plaintiffs do not seek to justify monetary relief other than restitution under the unfair competition law: The enhanced remedy is sought under section 3345, a separate statute, which specifically authorizes such an enhanced remedy in unfair competition actions brought by senior citizens. We simply must presume the Legislature meant what it said when it provided section 3345 applied in unfair competition actions involving a fine, civil penalty or "any other remedy" (italics added) the purpose of which is to punish or deter. (See People v. Toney (2004) 32 Cal.4th 228, 232 [8 Cal.Rptr.3d 577, 82 P.3d 778] ["[i]f the statutory language is unambiguous, `we presume the Legislature meant what it said, and the plain meaning of the statute governs'"]; accord, Genlyte Group, LLC v. Workers' Comp. Appeals Bd. (2008) 158 Cal.App.4th 705, 714 [69 Cal.Rptr.3d 903]; see also Hood v. Hartford Life & Accident Ins. Co. (E.D.Cal. 2008) 567 F.Supp.2d 1221, 1227 ["[t]he text of the statute clearly indicates that Section 3345 applies to the UCA [unfair competition law] and the CLRA, as both Acts prohibit `unfair practices'"].)
National Western insists section 3345's separate authorization for an enhanced remedy in unfair competition cases is immaterial. Other statutes, it notes, also authorize the recovery of treble or punitive damages (see, e.g., Code Civ. Proc., § 425.13 [authorizing punitive damages in action for professional negligence against health care provider under certain circumstances]; Civ. Code, § 987, subd. (e)(3) [authorizing punitive damages in actions involving destruction or alteration of "fine art"]); but those provisions have never been used to justify a treble damage award under the unfair competition law. In fact, it argues, the Supreme Court has repeatedly held punitive damages, authorized under Civil Code section 3294 for acts involving oppression, fraud or malice, are not permitted under the unfair competition law. (See Korea Supply, supra, 29 Cal.4th at pp. 1148-1149; cf. Cel-Tech, supra, 20 Cal.4th at p. 179 [treble damages not permitted under unfair competition law].)
(8) National Western's statutory analogies miss the mark. Code of Civil Procedure section 425.13 is applicable to professional negligence actions, not unfair competition actions. Civil Code section 987, authorizing a separate *100 action for the destruction of fine art, provides a separate cause of action (and includes within that action possible remedies of compensatory damages, punitive damages and attorney fees), not an enhanced remedy in an unfair competition action.
(9) Moreover, although National Western likens Civil Code section 3294's general authorization of punitive damages to section 3345's "trebling" authorization, the two statutes are quite different. Civil Code section 3294 is a general punitive damages statute. Section 3345, in contrast, is a specific mandate of an enhanced remedy in actions by senior citizens or disabled persons asserting unfair competition. To suggest it does not apply in an action by senior citizens seeking redress for unfair competition under the unfair competition law when the only statutory prerequisites have been satisfied is to ignore the statute's express language. (See Reno v. Baird (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333] ["`[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage'"]; accord, Donovan v. Poway Unified School Dist. (2008) 167 Cal.App.4th 567, 593 [84 Cal.Rptr.3d 285].)[14]

b. Section 3345 does not require the remedy be "discretionary"

Relying on language from section 3345, subdivision (b), concerning the proper application of the statute "when the amount of the fine, penalty or other remedy is subject to the trier of fact's discretion," National Western also contends the section's enhancement only applies if the amount of the fine, penalty or other remedy is discretionary. Insisting restitution awarded under the unfair competition law is not discretionary (see Cortez v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 178 [96 Cal.Rptr.2d 518, 999 P.2d 706] ["a restitutionary order under [Bus. & Prof. Code, §] 17203" encompasses "quantifiable sums one person owes to another"]), National Western argues restitution cannot be subject to a section 3345 enhancement.
(10) National Western's argument is based on a fundamentally flawed reading of the statutory language. The first sentence of section 3345, subdivision (b), provides, when the amount of the fine, penalty or other remedy is subject to the trier of fact's discretion, the trier of fact shall consider various *101 enumerated factors, including "whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons," in "determining the amount of fine, civil penalty or other penalty, or other remedy to impose." The second sentence of subdivision (b) instructs the trier of fact, once the amount of the penalty or other remedy is fixedeither because it is set by statute or determined by the trier of factto consider those same factors in deciding whether to treble the award.[15]
A careful reading of the statute permits no other conclusion. Section 3345 specifically authorizes trebling either "an amount . . . authorized by the statute, or, where the statute does not authorize a specific amount," the amount the trier of fact imposed in its discretion. (§ 3345, subd. (b).) If, as National Western asserts, section 3345 applied only to actions in which the fine, penalty or other remedy was subject to the trier of fact's discretion, it would not apply to any action in which the fine or civil penalty was fixed by statute. Such a conclusion is directly contrary to the statutory language as well as its purpose. (See Reno v. Baird, supra, 18 Cal.4th at p. 658 [statute must be read to avoid interpretation that would render any of its provisions a nullity].)
(11) Equally flawed is National Western's assertion the trial court has no discretion under the unfair competition law in determining the amount of restitution to be awarded. Restitution is an equitable remedy. (Cortez v. Purolator Air Filtration Products Co., supra, 23 Cal.4th at p. 180.) "A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute." (Ibid.; see also Olson v. Cohen (2003) 106 Cal.App.4th 1209 [131 Cal.Rptr.2d 620].) If equity demands a lesser amount than that needed to fully restore the plaintiff to the status quo, the trial court may award a lesser amount. (See, e.g., Olson, at p. 1214 [unfair competition action is equitable in nature and court may consider equitable factors in deciding amount of restitution to award].)

4. Section 3345 Applies to Actions to Enforce the Unfair Competition Law

Far more troubling than National Western's arguments parsing (incorrectly) the meaning of particular words and phrases in section 3345 is the position of *102 amici curiae, the Association of California Life and Health Insurance Companies, North American Company for Life and Health Insurance and Midland National Life Insurance Company, that the three enhanced remedy provisions included in Senate Bill No. 1157 (1987-1988 Reg. Sess.)the addition of Business and Professions Code section 17206.1 to the unfair competition law; the amendment of the CLRA to provide a civil penalty in actions under the act by senior citizens and disabled persons; and the adoption of section 3345are properly viewed as independent enactments, each with its own, self-contained provisions dealing with enhanced protection for senior citizens and disabled persons.[16]
(12) The amici curiae properly observe it is generally presumed legislation is enacted with an awareness of existing law (see, e.g., Shirk v. Vista Unified School Dist. (2007) 42 Cal.4th 201, 212 [64 Cal.Rptr.3d 210, 164 P.3d 630] ["[t]he Legislature is deemed to be aware of existing statutes, and we assume that it amends a statute in light of those preexisting statutes"]; People v. Licas (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507] ["`[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes "`in light of such decisions as have a direct bearing upon them.'"'"]), and an intention to overturn long-established principles of law is not inferred in the absence of a clear expression in either the statutory language or legislative history. (Van Horn v. Watson (2008) 45 Cal.4th 322, 333 [86 Cal.Rptr.3d 350, 197 P.3d 164] ["`"[w]e do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied"'"]; Torres v. Automobile Club of So. California (1997) 15 Cal.4th 771, 779 [63 Cal.Rptr.2d 859, 937 P.2d 290] ["courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication"].)
The well-established principles of law at issue here are, as discussed above, that restitution is the only monetary relief available to a private litigant under the unfair competition law and that only the Attorney General and designated public prosecutors are empowered to recover civil penalties in actions under *103 the unfair competition laws. (See Korea Supply, supra, 29 Cal.4th at p. 1148, fn. 6 ["[i]n public actions, civil penalties may be collected from a defendant"].) Surely, the amici curiae contend, if the Legislature had intended section 3345 to apply to private restitution awards or civil penalties recoverable under the unfair competition law, it would have said so. Far from doing that, the Legislature made the amendment to the unfair competition law independent and self-contained, defining the terms "senior citizen" and "disabled person" and specifying the factors for the court to consider in deciding whether to impose the enhanced civil penalty under Business and Professions Code section 17206.1 rather than cross-referencing the CLRA or section 3345. Indeed, the amici curiae argue, if the Legislature had intended section 3345 to extend to the unfair competition law, the enactment of Business and Professions Code section 17206.1 would have been superfluous.
The amici curiae's explanation of how the various portions of Senate Bill No. 1157 (1987-1988 Reg. Sess.) should relate to each other is certainly reasonable from a policy perspective. But their position is inconsistent with the plain language of the statute itself. In the same bill that added Business and Professions Code section 17206.1 to the state's basic unfair competition law, the Legislature provided that new section 3345 would be applicable to actions brought to redress unfair or deceptive acts or practices or unfair methods of competition. Yet nowhere in Senate Bill No. 1157 or in the committee reports or analyses accompanying its passage is there any suggestion that "action brought to redress . . . unfair methods of competition" did not include the unfair competition law (or the CLRA). The natural reading of the language actually used by the Legislature, which is by no means absurd, compels the contrary conclusion. (See Miklosy v. Regents of University of California, supra, 44 Cal.4th at p. 898, fn. 6 ["because we find no compelling evidence of legislative error, and because the statutory scheme is neither absurd nor inherently unfair, we must construe the law as written by the Legislature"]; see also id. at p. 907 (conc. opn. of Werdegar, J.) [agreeing that court properly construes statute in accord with its unambiguous language even if contrary to the overall purposes and structure of the legislative scheme, but urging Legislature to revisit the statute if the words used do not properly convey its intent].)[17]
*104 (13) There is no merit to the amici curiae's contention that construing section 3345 to apply to actions under the unfair competition law makes enactment of Business and Professions Code section 17206.1 superfluous. Without section 17206.1 the maximum civil penalty available per violation in an enforcement action on behalf of senior citizens or disabled persons would be $2,500 (pursuant to Bus. & Prof. Code, § 17206) trebled under section 3345. With the enhanced penalty provision of section 17206.1 the potential available civil penalty is increased to $5,000 per violation, which can then be trebled. Nor is the specification of factors relating to senior citizens in section 17206.1 in any way inconsistent with the repetition of those same factors in section 3345. As stated in section 17206.1 the factors assist the court, as trier of fact, in assessing whether to impose a civil penalty greater than the penalty specified in section 17206 (that is, whether to impose as much as an additional $2,500 per violation). In section 3345 the factors are used to decide whether to increase the base civil fine up to as much as treble the original sum. Although the analysis for these two steps may be essentially the same, the results are quite different.
Finally, although our interpretation of the scope of section 3345 and its application to actions brought under the unfair competition law is based on the plain language of the statute itself, the legislative history of Senate Bill No. 1157 (1987-1988 Reg. Sess.)to the extent it sheds any light on the issue at allsupports our conclusion. (See California School Employees Assn. v. Governing Board (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321] ["Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose."]; accord, In re Tobacco II Cases, supra, 46 Cal.4th at p. 316 ["even though recourse to extrinsic material is unnecessary given plain language of statute, we may consult it for material that buttresses our construction of the statutory language"]; see also Aguiar v. Superior Court (2009) 170 Cal.App.4th 313, 326 [87 Cal.Rptr.3d 813].) The twin purposes of the 1988 legislation were to encourage the investigation and prosecution of deceptive business practices perpetrated against senior citizens and to create new forms of civil redress available to senior citizens to "compensate for the lack of [existing] remedies." (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1157 (1997-1998 Reg. Sess.) as amended June 13, 1988, p. 2, par. 2.) It is fully consistent with those goals to construe section 3345 to apply to unfair competition actions brought on behalf of senior citizens under the unfair competition law. (See generally Viles v. State of California (1967) 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818] [remedial legislation must be liberally construed to protect persons within its purview].)

*105 DISPOSITION
The petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order of November 14, 2008 granting National Western's motion for judgment on the pleadings and to enter a new order denying that motion and to conduct any further proceedings not inconsistent with this opinion. Petitioners are to recover their costs in this writ proceeding.
Woods, J., and Jackson, J., concurred.
NOTES
[1] The certified class was defined as, "All California residents who purchased National Western Life Insurance Company deferred annuities when they were age 65 or older under the following certificate forms: Confidence Flex 85 (01-1114CA-98); Confidence Flex 45 (01-11114CB-98); Confidence Index 2000 (01-1117C-99); Liberty Champion (01-1128C-02-CA)."
[2] The trial court certified a subclass of "[a]ll California residents who purchased National Western Life Insurance Company deferred annuities when they were age 65 or older under the following certificate forms sold by Ezra Chapman: Confidence Flex 85 (01-1114CA-98); Confidence Flex 45 (01-11114CB-98); Confidence Index 2000 (01-1117C-99); Liberty Champion (01-1128C-02-CA)."
[3] In urging new legislation, the Department of Consumer Affairs noted several reasons seniors are susceptible to unfair business practices: Senior citizens "usually have substantially reduced incomes and often are retired. A reduced income can limit a person's mobility and with it the ability to go elsewhere when prices are high or sales practices are abusive. Reduced mobility caused by fear of crime and poor health also reduces access to information sources and increases reliance on door-to-door, telephone and mail order sales. [¶] . . . [¶] When seniors are defrauded, few are able to replace the loss because of their reduced or lost earning capacity. In some cases, when life savings or homes are lost through fraudulent schemes, seniors must turn to the state and public agencies for ongoing assistance." (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended June 13, 1988, p. 3.)
[4] At the request of the parties the trial court took judicial notice of portions of the legislative history of Senate Bill No. 1157 (1987-1988 Reg. Sess.). We do, as well, but our review has included material apparently not presented to the trial court. (See Evid. Code, § 459, subd. (a)(1).)
[5] The CLRA prohibits specified unfair and deceptive acts and practices in a "transaction intended to result or which results in the sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).)
[6] The available legislative history does not explain why the new provision was renumbered section 3345 rather than section 3284.
[7] In addition, the CLRA attorney fee provision was expanded to apply in any action under the act, not only those pursued on behalf of senior citizens and disabled persons. (See Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended Apr. 12, 1988, § 3.)
[8] Business and Professions Code section 17206.1 provides, "(a)(1) In addition to any liability for a civil penalty pursuant to Section 17206, any person who violates this chapter, and the act or acts of unfair competition are perpetrated against one or more senior citizens or disabled persons, may be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which may be assessed and recovered in a civil action as prescribed in Section 17206. [¶]. . . [¶] (c) In determining whether to impose a civil penalty pursuant to subdivision (a) and the amount thereof, the court shall consider, in addition to any other appropriate factors, the extent to which one or more of the following factors are present: [¶] (1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons. [¶] (2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person. [¶] (3) Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct. . . ."
[9] To ensure that senior citizens benefit from such public prosecutions, Business and Professions Code section 17206.1 also requires that "[r]estitution ordered pursuant to this subdivision" be given "priority over recovery of any civil penalty" under section 17206.1, "but shall not be given priority over any civil penalty imposed pursuant to subdivision (a) of Section 17206." (Bus. & Prof. Code, § 17206.1, subd. (d).)
[10] Civil Code section 1761, subdivision (f), part of the CLRA, defines "senior citizen" as "a person who is 65 years of age or older." Subdivision (g) defines "disabled person" as "any person who has a physical or mental impairment that substantially limits one or more major life activities."
[11] The factors to be considered by the trial court in determining whether to impose the enhanced remedy are: "(1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons. [¶] (2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person. [¶] (3) Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct." (§ 3345, subd. (b).) The identical factors are included in Business and Professions Code section 17206.1, subdivision (c).
[12] We need not address whether a common law fraud claim seeking rescission and restitution (see Civ. Code, §§ 1682, 3343) would fall within the ambit of section 3345.
[13] The deterrent effect of a restitution award has also been recognized in cases not involving the unfair competition law. (See, e.g., McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1983) 33 Cal.3d 816, 821 [191 Cal.Rptr. 458, 662 P.2d 916] [deterrence is object of restitution award under unfair practices law (Bus. & Prof. Code, § 17500 et seq.)]; Beverly v. Anderson (1999) 76 Cal.App.4th 480, 487 [90 Cal.Rptr.2d 545] [restitution in case involving welfare fraud serves to deter potential wrongdoers]; People v. Bernal (2002) 101 Cal.App.4th 155, 161-162 [123 Cal.Rptr.2d 622], citing People v. Moser (1996) 50 Cal.App.4th 130, 135-136 [57 Cal.Rptr.2d 647] [restitution in criminal context has objectives beyond simply indemnifying the victim; "[i]t also seeks to rehabilitate the defendant and deter defendant and others" from future criminality].)
[14] Were section 3345 merely a general authorization of treble damages in civil actions brought by senior citizens or disabled persons, we would agree the general authorization would not trump the specific, limited restitution remedy provided in Business and Professions Code section 17203. (See, e.g., Lake v. Reed (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311] ["more specific statute controls over a more general one"]; Cumero v. Public Employment Relations Bd. (1989) 49 Cal.3d 575, 587 [262 Cal.Rptr. 46, 778 P.2d 174] [same].) But as we must repeatedly note, section 3345 by its very terms applies, without limitation, to actions brought by or on behalf of those categories of individuals "to redress unfair or deceptive acts or practices or unfair methods of competition."
[15] As discussed above, in its initial iteration section 3345 simply directed consideration of factors relating to the impact of the defendant's conduct on senior citizens and disabled persons in fixing the amount of an otherwise authorized fine, penalty or other remedy. (Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended July 9, 1987.) The second sentence in subdivision (b) permitting the trier of fact to impose up to three times the amount of the fine, penalty or other remedy once the base amount was determined was included with the April 1988 amendments to the legislation. (See Sen. Bill No. 1157 (1987-1988 Reg. Sess.) as amended Apr. 12, 1988.)
[16] National Western expressly declines to adopt amici curiae's argument, stating, although section 3345 does not apply to private actions under the unfair competition law seeking only restitution as a remedy, it takes no position on the question whether the civil penalties specified in Business and Professions Code sections 17206 and 17206.1 may be trebled in an appropriate case under section 3345.
[17] The interrelation, rather than the independence, of the various provisions of Senate Bill No. 1157 is underscored by cross-references that exist between the new CLRA provisions and section 3345. As discussed, the definitions of "senior citizen" and "disabled person" added to the CLRA are adopted by section 3345 and the specific factors for imposing an enhanced remedy delineated in section 3345 are incorporated by reference in the CLRA civil penalty provision. Yet the amici curiae argue, as they must to be consistent, the new CLRA civil penalty provisions, like those added to the unfair competition law, are not subject to trebling under section 3345.